IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLUMINA, INC., | No. C 14-01921 SI |
| Plaintiff-Counterdefendant, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS AND TO STRIKE** |
| v. | |
| ARIOSA DIAGNOSTICS, INC., | |
| Defendant-Counterclaimant. | |

A motion by plaintiff-counterdefendant Illumina, Inc. to dismiss and to strike defendant-counterclaimant Ariosa Diagnostics, Inc.'s counterclaims and defenses is scheduled for a hearing on August 8, 2014. Docket No. 31. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Illumina's motion.

## BACKGROUND

The present matter involves a patent infringement action initiated by Illumina against Ariosa, pertaining to U.S. Patent No. 7,955,794 ("the '794 patent"). On April 25, 2014, Illumina filed its complaint against Ariosa. Docket No. 1. Ariosa filed an answer and counterclaims against Illumina on May 21, 2014, and it filed a first amended answer and counterclaims on June 11, 2014. Docket Nos. 15, 26-3. By the present motion, Illumina moves pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) to dismiss/strike Ariosa's counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory judgment of invalidity and Ariosa's invalidity affirmative defenses. Docket No. 31, Def.'s Mot.

## LEGAL STANDARD

### I. Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008). In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

### II. Rule 12(f) Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A defense may

2

be insufficient "as a matter of pleading or as a matter of substance." *Sec. People, Inc. v. Classic Woodworking, LLC*, No. C-04-3133 MMC, 2005 U.S. Dist. LEXIS 44641, at *5 (N.D. Cal. Mar. 4, 2005). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives the plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (citing *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)); *accord Simmons v. Navajo*, 609 F.3d 1011, 1023 (9th Cir. 2010). However, motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). "'Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings.'" *Sec. People*, 2005 U.S. Dist. LEXIS 44641, at *8. When a defense is stricken, "leave to amend should be freely given," provided no prejudice results against the opposing party. *Wyshak*, 607 F.2d at 826.

## DISCUSSION

**I. Ariosa's Counterclaims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**

**A. Arbitration**

First, Illumina argues that Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing should be dismissed because the counterclaims are subject to an arbitration provision, and Ariosa failed to pursue arbitration before filing suit.[1] Pl.'s Mot. at 2-4. In response, Ariosa argues that its counterclaims are not subject to the arbitration clause under the terms of the parties' agreement. Def.'s Opp'n at 3-12.

Arbitration is a matter of contract, and there is a liberal federal policy favoring arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted). In determining whether the parties agreed to arbitrate the present dispute, the Court must determine "(1) whether a valid agreement to

---

[1] Although arbitration agreements are typically enforced through a motion to compel arbitration and a request to stay the proceedings pursuant to 9 U.S.C. § 3, they may also be enforced through a motion to dismiss. *Alliance Bank of Ariz. v. Patel*, No. CV 13-736 CAS (JCx), 2013 U.S. Dist. LEXIS 79202, at *7-8 n.1 (C.D. Cal. Jun. 3, 2013); *see, e.g.*, *Sandstone Mktg. v. Precision Converters, Inc.*, No. CV 12-01176-PHX-FJM, 2012 U.S. Dist. LEXIS 130437, at *5-7 (D. Ariz. Sept. 13, 2012) (finding that all of plaintiff's claims are subject to an arbitration clause and granting defendant's motion to dismiss).

3

arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, the parties do not dispute the existence of a valid agreement to arbitrate. Rather, the parties dispute whether the agreement encompasses Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing.

"The Supreme Court has emphasized that the 'first principle' of its arbitration decisions is that '[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741-42 (9th Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857 (2010)). When determining whether parties have agreed to submit a particular dispute to arbitration, the court should apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration. *Id.* at 742; *see also AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) ("[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'").

> This policy, however, "is merely an acknowledgment of the FAA's commitment to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" Accordingly, the Supreme Court "[has] never held that this policy overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.' Nor [has the Court] held that courts may use policy considerations as a substitute for party agreement."

*Id.* (emphasis in original) (quoting *Granite Rock*, 130 S. Ct. at 2859).

Section 31(c) of the relevant agreement contains the arbitration provision at issue and provides in pertinent part:

> Subject to the terms and conditions of this Section 31(c), any dispute, claim or controversy arising out of or relating to the breach, termination, enforcement, interpretation or validity of this Agreement, shall be determined by arbitration in San Diego California[.] . . . This Section 31(c) shall not apply to, and no arbitration shall

4

> resolve, disputes relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights.[2]

Docket No. 31-2, Walter Decl. Ex. 1 at 17 § 31(c). Ariosa argues that its breach counterclaims do not fail within the scope of this arbitration provision because its breach counterclaims relate to issues of infringement of a patent. Def.'s Opp'n at 3-12. The Court agrees.

In the first amended answer and counterclaims, Ariosa alleges that it entered into a sales and supply agreement with Illumina on January 4, 2012 ("the Agreement"). Docket No. 26-3 ¶ 18. Ariosa alleges that based on Illumina's representations in the Agreement, Illumina granted Ariosa an express or implied license to the '794 patent. *Id.* ¶ 28. Ariosa further alleges that the Agreement obligates Illumina to refrain from asserting the '794 patent against Ariosa in connection with the accused product, and that Illumina has breached the Agreement by bringing the present lawsuit for infringement of the '794 patent. *Id.* ¶¶ 66, 74. Therefore, Ariosa's breach counterclaims are centered on its contention that it has been granted an express or implied license to the patent-in-suit. Indeed, Illumina agrees with this characterization of the counterclaims. In its reply brief, Illumina states: "In a nutshell, Ariosa's breach counterclaims boil down to the contention that Section 4(a) of the supply agreement grants Ariosa a license (either express or implied) to every single patent Illumina owns. Ariosa thus contends that Illumina breached the supply agreement by merely by suing Ariosa for patent infringement." Docket No. 38-4, Pl.'s Reply at 3.

Because Ariosa's breach counterclaims are centered on its contention that it has been granted an express or implied license to the '794 patent, the counterclaims clearly relate to[3] issues of patent infringement. Under 35 U.S.C. § 271, a defendant can only be liable for infringement if the allegedly infringing acts are carried out "without authority." 35 U.S.C. §§ 271(a), (f), (g). Therefore, whether an accused infringer has been granted an express or implied license is an issue that is directly relates to

---

[2] "Intellectual Property Rights" is defined in the Agreement as "all rights in patent, copyrights, trade secrets, know-how, trademark, service mark and trade dress rights and other intellectual property rights, current or future, under the laws of any jurisdiction, together with all application therefor and registrations thereto." Docket No. 31-2, Walter Decl. Ex. 1 at 4 § 1.

[3] The Supreme Court has noted that the phrase "relate to" has a "'broad common-sense meaning,'" such that "relate to," in the normal sense of the phrase, means to have "'a connection with or reference to.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *accord Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983) (citing Black's Law Dictionary 1158 (5th ed. 1979)).

5

whether a patent has been infringed. *See Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003) ("[A]ll or part of a patentee's right to exclude others from making, using, or selling a patented invention may be waived by granting a license, which may be express or implied."); *McCoy v. Mitsuboshi Cutlery*, 67 F.3d 917, 920 (Fed. Cir. 1995) ("[A] patent or trademark owner may contract to confer a license on another party. . . . A licensee, of course, has an affirmative defense to a claim of patent infringement."). Illumina argues that Ariosa's counterclaims can be resolved solely by looking at the terms of the supply agreement. Pl.'s Reply at 3, 7. However, that the dispute can be resolved through an examination of an agreement rather than an examination of the accused product does not change the fact the dispute is related to the determination of whether the patent has been infringed. Because Ariosa's breach counterclaims unambiguously relate to issues of patent infringement, the counterclaims are outside of the scope of the arbitration clause, and the presumption of arbitrability has been rebutted. Accordingly, the Court declines to dismiss Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing based on the arbitration provision contained in the Agreement.

### B. Damages

Second, Illumina argues that Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing should be dismissed because Ariosa has failed to adequately plead damages. Pl.'s Mot. at 4-5. Under California law,[4] the elements of a cause of action for breach of contract are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Under California law, the factual elements of a cause of action for beach of the covenant of good faith and fair dealing are: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."

---

[4] The Agreement states that it is governed by California law. Docket No. 31-2, Walter Decl. Ex. 1 at 18 § 32(f).

6

*Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (citing Judicial Council of California Civil Jury Instruction 325). Thus, an essential element of Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing is that Ariosa has been harmed by the alleged breach. *See Bramalea California, Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004) ("A breach of contract is not actionable without damage.").

Ariosa argues that it has adequately alleged damages in connection with these two counterclaims. The Court disagrees. In support of this argument, Ariosa identifies three factual allegations contained in its first amended answer and counterclaims. Def.'s Opp'n at 13. First, Ariosa alleges that Illumina's actions were an attempt to improperly inhibit competition. Docket No. 26-3 ¶ 52. Second, Ariosa alleges that Illumina's actions have imposed unwarranted burdens on Ariosa with the purpose of diminishing Ariosa's ability to compete with Verinata and other competitors. *Id.* ¶ 74. Third, Ariosa alleges that Illumina's actions impede or threaten to disrupt Ariosa's relationships with customers, third-party contractors, and investors. *Id.* All of these allegations relate to potential future harm, not harm that has already occurred. Ariosa alleges that Illumina's actions may cause it competitive harm or may disrupt its relationships with customers, third-party contractors, and investors. Ariosa does not allege that Illumina's action have actually caused it to suffer competitive harm or have actually disrupted its relationships with clients, third-party contractors, or investors. These allegations of potential future harm are insufficient to support claims for breach of contract and breach of the covenant of good faith and fair dealing. *See Scott v. Pacific Gas & Electric Co.*, 11 Cal. 4th 454, 473 (1995) ("It is fundamental that [contract] damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery."); *see also Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal. 4th 1037, 1048 (2003) ("'[D]amages may not be based upon sheer speculation or surmise, and the mere possibility or even probability that damage will result from wrongful conduct does not render it actionable.'"). Accordingly, the Court dismisses without prejudice Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing to the extent that the claims seek damages.

Ariosa argues that its breach counterclaims should not be dismissed to the extent the claims request specific performance. Def.'s Opp'n at 14 n.7. In its prayer for relief, Ariosa seeks both

7

monetary damages and specific performance. Docket No. 26-3 at 24. "[S]pecific performance is a remedy for breach of contract," *Golden West Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 49 (1994), and it "is equitable in nature."[5] *Steiner v. Thexton*, 48 Cal. 4th 411, 425 n.14 (2010). A court may order specific performance even "when no actual injury has as yet been sustained, but is only apprehended from the peculiar relations of the parties." *Williams v. Coleman*, 70 Cal. App. 400, 405 (1924). Therefore, Ariosa's allegations of potential future harm as a result of the alleged breach are sufficient to state a claim for relief to the extent its counterclaims seek specific performance. Accordingly, the Court declines to dismiss Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing to the extent that the counterclaims seek specific performance.

## II. Ariosa's Declaratory Judgment Counterclaim for Invalidity and Ariosa's Invalidity Defenses

Illumina moves to dismiss Ariosa's declaratory judgment counterclaim to the extent it seeks a declaration of invalidity of the '794 patent and to strike all of Ariosa's defenses that challenge the validity of the '794 patent. Pl.'s Mot. at 7-11. Illumina argues that this counterclaim and these defenses are barred by the doctrine of assignor estoppel because two of Ariosa's founders, John Stuelpnagel and Arnold Oliphant, are named inventors and assignors of the '794 patent. *Id.* In response, Ariosa argues that a determination of whether the doctrine of assignor estoppel applies to its invalidity counterclaim and defenses is inappropriate at the pleading stage. Def.'s Opp'n at 16-24.

"Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity." *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988). "This doctrine prevents the 'unfairness and injustice' of permitting a party 'to sell something and later to assert that what was sold is worthless.'" *Mentor Graphics Corp. v. Quickturn Design Sys.*, 150 F.3d 1374, 1377 (Fed. Cir. 1998).

---

[5] To obtain the equitable remedy of specific performance, the plaintiff must show "(1) the inadequacy of his legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract." *Tamarind Litho. Workshop v. Sanders*, 143 Cal. App. 3d 571, 575 (1983).

8

"A determination whether assignor estoppel applies in a particular case requires a balancing of the equities between the parties." *Carroll Touch, Inc. v. Electro Mechanical Sys.*, 15 F.3d 1573, 1579 (Fed. Cir. 1993). The determination of whether to apply the doctrine of assignor estoppel is "committed to the sound discretion of the trial court" and is reviewed for abuse of that discretion. *Id.*

"Assignor estoppel also prevents parties in privity with an estopped assignor from challenging the validity of the patent." *Mentor Graphics*, 150 F.3d at 1379.

> Privity, like the doctrine of assignor estoppel itself, is determined upon a balance of the equities. If an inventor assigns his invention to his employer company A and leaves to join company B, whether company B is in privity and thus bound by the doctrine will depend on the equities dictated by the relationship between the inventor and company B in light of the act of infringement. The closer that relationship, the more the equities will favor applying the doctrine to company B.

*Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990). "Assessing a relationship for privity involves evaluation of all direct and indirect contacts." *Mentor Graphics*, 150 F.3d at 1379.

Illumina argues that the doctrine of assignor estoppel should be applied against John Stuelpnagel and Arnold Oliphant because while employed at Illumina, they along with other co-inventors developed the invention disclosed in the '794 patent and assigned their rights, title, and interest in the patent application to Illumina in exchange for good and valuable consideration. Pl.'s Mot. at 8-9. Illumina further argues that Drs. Stuelpnagel and Oliphant are in privity with Ariosa because they are co-founders of Ariosa, Dr. Stuelpnagel now serves as the Executive Chairman of Ariosa's Board of Directors, and Dr. Oliphant now serves as Ariosa's Chief Scientific Officer. *Id.* at 9-11. However, the Court agrees with Ariosa that the issue of assignor estoppel in the present case cannot be addressed at the pleading stage and would more appropriately be addressed at the summary judgment stage. In particular, the Court cannot decide the issue of privity at this time.

In an effort to establish privity between Ariosa and Drs. Stuelpnagel and Oliphant, Illumina has provided the Court with several pieces of evidence. *See* Docket No. 31-1, Walter Decl. Ex. 4; Docket No. 38, Walter Decl. Exs. 9-11. However, all of this evidence is outside the pleadings, and, therefore, is not properly before the Court on a motion to dismiss or a motion to strike. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"); *Sec. People*, 2005 U.S. Dist.

1 LEXIS 44641, at *8 ("'Affirmative defenses will be stricken only when they are insufficient on the face
2 of the pleadings.'"). In deciding a motion to dismiss or to strike, the Court may take judicial notice of
3 matters of public record. S*ee Lee*, 250 F.3d at 688-89. But, Illumina has not requested that the Court
4 take judicial notice of any of these exhibits or demonstrated that these exhibits are properly subject to
5 judicial notice. Moreover, even if the Court could take judicial notice of the exhibits, Illumina does not
6 merely request that the court take judicial notice of the existence of these documents and their contents.
7 Rather, Illumina requests that the Court consider these exhibits for the truth of the matters asserted in
8 the documents. It is improper for a court to take judicial notice of an exhibit for the truth of the matters
9 asserted therein. *See Lee*, 250 F.3d at 690; *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052,
10 1067 (N.D. Cal. 2010). Further, the Court recognizes that in *Diamond Scientific*, the Federal Circuit
11 stated: "when a plaintiff raises an equitable challenge to a defense, such as assignor estoppel, a court
12 ought to have a bit more latitude to consider materials beyond the pleadings, particularly if they present
13 uncontested factual matters." 848 F.2d at 1227. However, here, the evidence Illumina relies on does
14 not present uncontested factual matters. For example, Ariosa contests whether Drs. Stuelpnagel and
15 Oliphant are founders of Ariosa. *See* Def.'s Opp'n at 20, 22. In addition, Ariosa asserts that none of
16 the exhibits provide specific information about the involvement of Drs. Stuelpnagel and Oliphant in the
17 development of the accused product. *Id.* at 22. Accordingly, the Court concludes that it is inappropriate
18 to determine the issues of privity and assignor estoppel at this stage in the litigation. *See, e.g.*, *Juniper*
19 *Networks, Inc. v. Palo Alto Networks, Inc.*, 881 F. Supp. 2d 603, 608 & n.7 (D. Del. 2012) (denying
20 motion to strike based on assignor estoppel where "[t]he parties have asked the court to look well
21 beyond the pleadings here and into highly disputed factual matters" and where the defendant denied that
22 the assignor was a founder of the company and asserted that he was not instrumental in the development
23 of the allegedly infringing product); *CDx Diagnostics, Inc. v. Histologics LLC*, No. CV 13-7909-DOC
24 (RNBx), 2014 U.S. Dist. LEXIS 92683, at *5-11 (C.D. Cal. Jul. 7, 2014) (denying motion to dismiss
25 based on assignor estoppel as procedurally improper because the motion relied on materials outside the
26 pleadings and sought to have the court determine issues of fact); *Schultz v. iGPS Co. LLC*, No. 10 C 71,
27 2011 U.S. Dist. LEXIS 688, at *7-8 (N.D. Ill. Jan. 3, 2011) (stating that whether the defendants are in
28 privity with the assignor "is not a question the Court can resolve on a motion to dismiss"). "Indeed, in

10

the vast majority of the cases that the Court reviewed in considering this motion, courts applied assignor estoppel through a motion for summary judgment or after trial testimony." *CDx Diagnostics*, 2014 U.S. Dist. LEXIS 92683, at *10 (collecting cases). Therefore, at this time, the Court declines to find that Ariosa's invalidity counterclaim and defenses are barred by the doctrine of assignor estoppel.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Illumina's motion to dismiss and GRANTS Ariosa leave to amend. Specifically, the Court dismisses Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing to the extent that the claims seek damages. The Court declines to dismiss Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing to the extent that the claims seek specific performance, and the Court declines to dismiss Ariosa's invalidity counterclaim and its invalidity defenses. Should Ariosa choose to file a second amended answer and counterclaims, it shall be consistent with the terms of this order and must be filed on or before **September 2, 2014**.

**IT IS SO ORDERED.**

Dated: August 7, 2014

SUSAN ILLSTON
United States District Judge